## Houlehan v. The Pullman Company.

*Workmen's compensation—In the course of employment—Underlying and ultimate findings by the referee—Act of June 2, 1915.*

1. Where the underlying findings of fact by the referee do not sustain his ultimate conclusion that the deceased employee was killed in the course of his employment, the court has jurisdiction to pass upon the validity of the ultimate conclusion, as a question of law is presented, since the conclusion that deceased died in the course of his employment is a mixed conclusion of law and fact by reason of the statutory definition of the words "in the course of employment" in the Workmen's Compensation Act of June 2, 1915, P. L. 736.

2. On Sept. 28, 1920, decedent, who was employed as a Pullman conductor, left his home at 7.15 A. M. and went to the conductors' room on the upper floor of 104 North 15th Street, a room kept by defendant for the convenience of conductors, where they could change their clothes before or after their runs and sleep when arriving in the night or in the early hours of the morning. The deceased put on his uniform and went to report in due course to the platform man at Broad Street Station for duty before going on his run. There was no rule or order of the Pullman Company requiring him to visit 104 North 15th Street before going to work. He was assigned to a train leaving Philadelphia for Pittsburgh at 8.40 A. M. and was expected to report to the head platform man thirty minutes before departure to receive instructions. His pay time would have begun at 8.10 A. M. While crossing the street from 104 North 15th Street to Broad Street Station at 8.20 A. M. he was killed at 15th and Arch Streets by being crushed between two trolley cars. His widow and minor children filed a claim for compensation. The Pullman Company denied that he was at work at the time of the accident, and averred, therefore, that it had not occurred in the course of his employment. The referee found the above facts, and, in addition thereto, that deceased had no regular hours for work, but was at the beck and call of the company for twenty-four hours a day, and that he was killed in the course of his employment. There was uncontradicted testimony that when deceased left the station, when his train was in, his time was his own until he reported again to the station platform man. The referee awarded compensation and the board sustained the award. On appeal: *Held*, that the ultimate finding that deceased died in the course of his employment was not sustained by the underlying findings, and that, since the ultimate finding was a mixed finding of law and fact, the court had jurisdiction to pass upon its validity, and that rightly construed, the testimony showed that, at the time of the accident, deceased had not gone to work and that he had not been killed in the course of his employment, and there could be no compensation.

Appeal from award of referee and Compensation Board. C. P. No. 5, Phila. Co., Dec. T., 1921, No. 8993.

*Joseph A. Robbins,* for plaintiff.

*J. F. Jenkinson* and *George H. Detweiler,* for defendant, appellant.

MARTIN, P. J., Dec. 27, 1922.—This proceeding was under the Workmen's Compensation Act. After finding the material facts and inferring therefrom that James J. Houlehan met his death in the course of his employment with The Pullman Company, the referee awarded compensation to his wife and children.

An appeal was taken to the Compensation Board, which sustained the award, whereupon the case was removed to this court.

Undisputed evidence of witnesses before the referee proved that James J. Houlehan, who lived at No. 102 North Peach Street, in the City of Philadelphia, was employed by defendant as a conductor.

On Sept. 28, 1920, he left his home at 7.15 in the morning and went to a room on the upper floor of a building, No. 104 North 15th Street, which was rented to defendant, and known as the conductors' room, where conductors who wished to avail themselves of the privilege were permitted to make up their reports, keep their clothes in lockers and change from citizens' clothes

to uniform, and *vice versa.* There were also sleeping accommodations which conductors residing out of the city might occupy, free of charge, when arriving late at night or in the early hours of morning. The use of all these facilities, while free, was entirely optional. Some conductors availed themselves of the privilege and used the rooms, but a majority did not. Many of those who made no use of the rooms changed their clothes in the platform man's office at Broad Street Station. There were also conductors who prepared themselves at home and went directly to the station. After getting their equipment, consisting of tickets, punches, etc., the conductors reported to the platform man at the Broad Street Station for duty before going out on their daily runs.

On the sixth floor of the Franklin Trust Company building, in the receiving cashier's office of The Pullman Company, there was a long table, chairs, stationery and everything required by conductors to work on their reports, and this was the place where the reports were handed in.

There was no rule, regulation or order of the company requiring Houlehan to visit No. 104 North 15th Street before going to work.

He was assigned to take on train No. 15, leaving Philadelphia for Pittsburgh at 8.40 A. M., and was expected to report to the head platform man at Broad Street Station on the train platform thirty minutes before departure of the train to receive instructions from the second assistant superintendent. He had a regular run from Philadelphia to Harrisburg and Pittsburgh, with a fixed time to leave and a scheduled time to return to Philadelphia. When conditions made it necessary for him to be assigned for extra runs or to perform service during periods when entitled to "lay over," he received additional compensation for overtime. He had been running on The Reading, which gave him but one night a week at home, and requested to be assigned to a train on the Pennsylvania in order to obtain more nights home. The relief cashier having been required to relieve the regular cashier, who was on vacation, Houlehan took that man's run from Aug. 1st, except when diverted, and that was his regular run from Philadelphia to Harrisburg and Pittsburgh at the time of his death. His paytime would have started on the day he was killed at 8.10 A. M., had he reported to the station platform man at Broad Street Station at or before that hour.

On the morning of Sept. 28, 1920, about 8.05 A. M., he went to the conductors' room at No. 104 North 15th Street, where he changed from his civilian attire to his uniform coat and vest and took from his locker his grip. At 8.20, while on his way to Broad Street Station, he was killed at 15th and Arch Streets by being crushed between two trolley cars operated by the Philadelphia Rapid Transit Company.

A claim was presented by his widow and minor children, alleging that he died as the result of an accident occurring in the course of his employment.

An answer was filed by The Pullman Company, denying that he was at work for defendant at the time of the accident, and averring that the accident which caused his death did not occur in the course of his employment.

The claim was assigned to a referee for investigation and determination in accordance with the provisions of the Workmen's Compensation Act, and testimony was presented both on behalf of claimants and defendant.

The referee found as a fact that the decedent, while in the course of his employment with defendant, was crushed to death at 15th and Arch Streets, Philadelphia, between two trolley cars operated by the Philadelphia Rapid Transit Company; that, after changing his civilian clothes to the Pullman uniform, he proceeded to report to the office of the company at Broad Street Station to take charge of the Pullman cars on train No. 15, destined for

2 D. & C.

Pittsburgh, and, while so doing, he met with the accident which caused his death.  He also found that decedent was an extra conductor in the employ of defendant company, at their beck and call, throughout the twenty-four hours of the day, and that he had no regular hours for work, although the uncontradicted testimony was that he was not at the beck and call of the company throughout the twenty-four hours of the day, and that when he left the station, when his train was in, his time was his own, and he was not subject to orders until he reported again on the station platform.  The referee concluded as a matter of law claimants were entitled to compensation.

Defendant appealed to the board and filed exceptions to the following portions of findings of fact:

"1. *(a)* That decedent, 'while in the course of his employment with defendant, . . . was crused to death at 15th and Arch Streets, Philadelphia, Pa., between two trolley cars operated by the Philadelphia Rapid Transit Company.'

"*(b)* That the decedent, after changing his civilian clothes to the Pullman uniform, 'proceeded *to report* at the office of the company in Broad Street Station to take charge of the Pullman cars on train No. 15, destined to Pittsburgh, Pa., and, *while so doing*, he met with the accident which caused his death.'

"*(c)* 'That the decedent was *an extra* conductor in the employ of the defendant company, and that he was at their beck and call throughout the twenty-four hours of the day, and had no regular hours for work.'

"2. Because the uncontradicted testimony established—

"*(a)* The fact that the decedent's time would have started with the time he would have reported 'to the station platform man in Broad Street Station.'

"*(b)* There is no evidence that decedent did report to the office of the company in Broad Street Station to take charge of the Pullman cars on train No. 15, destined to Pittburgh, Pa., or that, while in the act of so reporting, he met with the accident which caused his death.

"*(c)* Because the testimony showed that, prior to and on the day of his death, decedent had been and was regularly assigned to a definite run, to wit, leaving Broad Street Station on Pennsylvania Railroad train No. 15, at 8.40 A. M., for Pittsburgh, and that decedent was only 'at the beck and call' of the defendant 'throughout the twenty-four hours of the day,' in so far as any transportation employee is of necessity subject to call in emergency for extra or special duty, and that if called for such extra or special service, he would have received extra or additional compensation, and prior to and at the time of the death of the decedent, he had had, and was having, 'regular hours for work.' "

And to his conclusions of law:

1. That the claimants are entitled to compensation.

2. That the decedent was injured in the course of his employment.

3. That a compensable occurrence or accident was averred or proved.

The findings of fact and conclusions of law of the referee were affirmed by the board and the appeal dismissed.

Defendant appealed and a transcript of the record was filed in this court, accompanied by the following exceptions:

"The board erred in affirming the findings of fact of the referee.

"The board erred in affirming the conclusions of law of the referee.

"The board erred in dismissing the appeal in this case.

"The board erred in finding that the referee did not err in awarding compensation.

"The board erred in finding: 'It may be stated as a general principle that where the employee is on the premises of his employer, his employment commences a reasonable time before the actual beginning of the work and continues a reasonable time after the work is over. . . . After a careful review of the evidence in this case, we feel that it is governed by this principle,' because this principle has no application to the case at bar, there being a definite place and a specific time to report for duty and to report off duty.

"The board erred in finding: 'It is a reasonable construction of the Compensation Act to hold that the employment of the claimant's deceased husband commenced when he reached the conductors' room provided for his use by his employer, and used by him as a safe place in which to store his uniform and satchel while off duty,' because there was a distinct place at which claimant's deceased husband had to report for duty, and a specified official to whom it was his duty to report, and he had never reached that place nor reported to that official.

"The board erred in finding: 'It was an incident of his employment that the decedent should change his clothes and prepare himself for the day's work, and this preparation was made on the premises of the employer. In our opinion, the employee in this case was in the course of his employment and actually furthering the business of his employer from the time he entered the conductors' room,' first, because nothing in the employer's business required the presence of the decedent at the conductors' room; and, second, because there were places provided by the employer at which its employees could change their uniform after reporting for duty to the platform man at Broad Street Station.

"The board erred in finding: 'It was his duty to prepare himself for the day's work in the conductors' room provided by his employer, and to proceed from there to Broad Street Station to take charge of the train to which he was assigned. Accordingly, while on his way from the conductors' room to the station, he was in the course of his employment and furthering the interests of his employer,' because there was no duty on the decedent to prepare himself in the conductors' room, nor was there any requirement by the employer that he should go there at all, and while he was on his way from the conductors' room to the station he was not in the course of his employment nor was he furthering the interests of his employer.

"The Pullman Company, appellant, also excepts to the following findings of fact of the referee sustained by the board, which it alleges to be unsupported by competent evidence:

" 'That on the morning of Sept. 28, 1920, decedent was on the premises of the defendant and had put on the required uniform of the defendant company so as to be qualified to report to the platform man to take charge of train No. 15, leaving Broad Street Station at 8.40 A. M.,' because the wearing of the uniform when reporting was not a qualification or a requirement, and that it is the custom to permit men, after reporting, to change into their uniforms in the office of defendant's platform man at Broad Street Station, or in the car the employee will have charge of leaving the station.

" 'That for some time prior to the accident the decedent was working as an extra conductor on trains Nos. 15, 8, 5 and 570, performing the duties of a regular conductor who was working in the office of the defendant's company,' because this language of the referee is meaningless. A man assigned to a regular run in a transportation system, with orders to remain there until removed, as was the case with decedent, is, for the purposes of the employment, a regular man.

" 'That the defendant company reserves the right to change the assignments of their conductors to meet any conditions that the service may warrant; that under this reservation their conductors are subject to call throughout the twenty-four hours of the day, and, therefore, had no regular hours for work,' because the uncontradicted testimony is that the decedent had regular hours for work and that he was not subject to call throughout the twenty-four hours of the day, and defendant company did not even have an accurate record of decedent's home address, because there was no custom of calling car service men at their homes for service.

" 'There is no doubt but that these rooms were provided, equipped and maintained by the defendant for the furtherance of their business,' because it appears that conductors' rooms are intended primarily as a sleeping-place for men away from their home districts over night; but no employee is required to go there, no one is paid for time spent there, no one is penalized for remaining away, and whether any conductor ever goes or not is never officially known.

" 'The decedent was on the premises of the defendant at No. 104 North 15th Street to comply with certain rules and regulations of his employers, so that he would be qualified to perform certain duties that had been assigned to him by his employer,' because the evidence is clear and uncontradicted that there were no rules or regulations of the employer requiring the decedent's presence at No. 104 North 15th Street, Philadelphia, on the date of his death."

Careful consideration of the evidence leads to the conclusion that the record does not support the inference and conclusion that Houlehan met his death while in the course of his employment. The underlying findings of fact negative and fail to support this ultimate or controlling finding, and prove that decedent had not entered upon his employment with defendant at the time of the accident, but was on his way to the station where his duties were to commence. A question of law is, therefore, presented which it becomes the duty of the court to determine: Flucker v. Carnegie Steel Co., 263 Pa. 113-119.

It is alleged on behalf of claimants that this vital point was established by direct proof; therefore, the question whether or not there was evidence to sustain it is one of law, and it is the duty of the court to review the record to determine whether there is any evidence to support this ultimate fact that decedent met his death in the course of his employment as defined by the act. The basic facts stated by the referee are not disputed. The question whether or not the vital point sought to be deduced from the basic facts may fairly be inferred therefrom, being one of law, it is the opinion of the court that the ultimate conclusion that decedent was killed in the course of his employment cannot be fairly inferred from the basic facts found by the referee and approved by the board.

In Stahl v. Watson Coal Co., 268 Pa. 452, the decedent was struck by a train while on his usual route home from work, walking on property in which his employer had an interest. It was held that there could be no recovery for his death. In that case the relation of employer and employee had ended. In the present case it had not commenced at the time of the accident.

Knorr v. Central Railroad of New Jersey, 268 Pa. 172, is distinguished from the present case because there the employee had no regular hours of employment and was required to hold himself in readiness at his home to be called for duty at any time, and to respond at once when called. Hence, he was considered on duty from the time he left home until he returned thereto. At the time of his death, the journey he had undertaken was expressly in the line of his only employment and to enable him to continue his work.

The fact that Houlehan had put on his uniform, and that the rules of the company forbade wearing it when off duty, did not mark the commencement of his service. The rules also required neatness of dress and appearance when reporting for duty, but a shave, shoe-shine or changing a collar or shirt could not be construed as the commencement of employment, when it was stipulated it should not commence until a fixed hour at a designated place.

The undisputed facts show that the accident did not happen in the course of decedent's employment, but, on the contrary, the employment had not commenced at the time, and the accident did not occur upon the property of defendant: Kuca v. Lehigh Valley Coal Co., 268 Pa. 163.

The use made by the decedent of the room rented by defendant did not bring him within the employ of the defendant, nor did the accident happen upon those premises. The fact that he had changed his clothes and wore a uniform presents no stronger legal claim than if he had stopped at No. 104 North 15th Street to wash up, shave or shine his shoes.

And now, to wit, Dec. 27, 1922, appellant's exceptions are sustained, the action of the Workmen's Compensation Board is reversed and the record remitted to the board for further hearing and determination: Act of June 26, 1919, § 427, P. L. 666; Kuca v. Lehigh Valley Coal Co., 268 Pa. 163-165.

NOTE.—As to the distinction between underlying and ultimate findings and the ground for holding that a finding that deceased met death in the course of his employment is a mixed conclusion of law and fact, see Flucker v. Carnegie Steel Co., 263 Pa. 113, 118, 119.